# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | GEORGE W. LINDBERG | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 5110 | **DATE** | 7/6/2012 |
| **CASE TITLE** | Gregory McMillen (#N-12324) vs. Q. Tanner, et al. | | |

**DOCKET ENTRY TEXT:**

The court construes the plaintiff's trust account statement [#3] as a motion for leave to proceed *in forma pauperis* and grants the motion. The court authorizes and orders the trust fund officer at the plaintiff's place of incarceration to deduct $10.65 from the plaintiff's account for payment to the Clerk of Court as an initial partial filing fee, and to continue making monthly deductions in accordance with this order. The clerk shall send a copy of this order to the trust fund officer at the Stateville Correctional Center. On the court's own motion, the plaintiff's claim relating to unsafe work conditions is summarily dismissed on initial review pursuant to 28 U.S.C. § 1915A. All defendants except Bradfield are terminated. The clerk is directed to issue summonses for service on defendant Bradfield by the U.S. Marshal. The clerk is further directed to send the plaintiff a Magistrate Judge Consent Form and Instructions for Submitting Documents along with a copy of this order.

■ **[For further details see text below.]**  **Docketing to mail notices.**

## STATEMENT

The plaintiff, an Illinois state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, correctional officials, violated the plaintiff's constitutional rights by acting with deliberate indifference to his safety and by retaliating against him for a grievance. More specifically, the plaintiff alleges that he injured himself while working on a dangerous and defective concrete slab on the floor; he additionally maintains that his work supervisor initiated false discipline and fired him from his job assignment after the plaintiff persisted in asking that the floor be fixed.

The plaintiff's motion for leave to proceed *in forma pauperis* is granted. Pursuant to 28 U.S.C. § 1915(b)(1), the plaintiff is assessed an initial partial filing fee of $10.65. The trust fund officer at the plaintiff's place of incarceration is authorized and ordered to collect the partial filing fee from the plaintiff's trust fund account and pay it directly to the Clerk of Court. After payment of the initial partial filing fee, the plaintiff's trust fund officer is directed to collect monthly payments from the plaintiff's trust fund account in an amount equal to 20% of the preceding month's income credited to the account. Monthly payments shall be forwarded to the Clerk of Court each time the amount in the account exceeds $10 until the full $350 filing fee is paid. All **(CONTINUED)**

mjm

| STATEMENT (continued) |
|---|

payments shall be sent to the Clerk, United States District Court, 219 S. Dearborn St., Chicago, Illinois 60604, attn: Cashier's Desk, 20th Floor, and shall clearly identify the plaintiff's name and this case number. This payment obligation will follow the plaintiff wherever he may be transferred.

Under 28 U.S.C. § 1915A, the court is required to conduct a prompt threshold review of the complaint. Here, even accepting the plaintiff's allegations as true, the court finds that the plaintiff has no tenable cause of action under the Civil Rights Act regarding unsafe work conditions.

The plaintiff has not described a work environment so unsafe as to implicate the Eighth Amendment. The Constitution "imposes upon prison officials the duty to take reasonable measures to guarantee the safety of the inmates." *Santiago v. Walls*, 599 F.3d 749, 758 (7th Cir. 2010), *citing Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To establish an Eighth Amendment claim that correctional officials acted with deliberate indifference to his safety, a plaintiff must show that: (1) he was "incarcerated under conditions posing a substantial risk of serious harm," and (2) defendant-officials acted with "deliberate indifference" to that risk. *Santiago*, 599 F.3d at 756; *Farmer*, 511 U.S. at 834. In the case at bar, the plaintiff cannot satisfy the objective standard.

To satisfy the objective prong, a plaintiff must demonstrate not only that he or she experienced, or was exposed to, a serious harm, but also that there was a known substantial risk that serious harm might actually occur. *Santiago*, 599 F.3d at 758, *citing Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). The general definition of "substantial risk" includes "risks so great that they are almost certain to materialize if nothing is done." *Brown*, 398 F.3d at 911 (citations omitted).

The facts of this case do not support an inference that the plaintiff was exposed to an objective, substantial risk. The plaintiff states that he was standing on a "defective concrete slab" working at a stove when he fell and injured himself, and that correctional officials failed to fix the floor afterwards. The courts have consistently found such relatively minor, potential hazards not sufficiently serious to rise to the level of a constitutional violation. For example, in *Christopher v. Buss*, 384 F.3d 879 (7th Cir. 2004), an inmate claimed that he was injured during a ball game when a baseball bounced off a "protrusive lip" on the softball field and hit him in the eye. The U.S. Court of Appeals for the Seventh Circuit affirmed dismissal upon initial screening, concluding that the defect in the field was not an excessive risk to inmate safety. As the Court of Appeals explained:

> An "objectively 'sufficiently serious' " risk . . . is one that society considers so grave that to expose any unwilling individual to it would offend contemporary standards of decency. Unlike the acute risks posed by exposure to raw sewage, or inordinate levels of environmental tobacco smoke, or amputation from operating obviously dangerous machinery, or potential attacks by other inmates, the risk of being hit by a softball as a result of a hazardous field condition is not one that "today's society chooses not to tolerate." *Christopher*, 384 F.3d at 882 (internal citations omitted).

Similarly, in *Murphy v. Walker*, 51 F.3d 714, 721 (7th Cir. 1995), dismissal of certain claims, including the lack of handrails in the shower, was upheld on review. Wet and slippery floors likewise do not implicate the Constitution. *Compare LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) ("slippery prison floors . .. do
**(CONSTITUTION)**

not state even an arguable claim for cruel and unusual punishment"); *see also Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("an inch or two" of accumulated water in the shower was not "an excessive risk to inmate health or safety"). Even shocks from exposed wiring has been found to be primarily an easily avoided, "unpleasant inconvenience" rather than evidence of deliberate indifference to a known substantial risk. *See Morissette v. Peters*, 45 F.3d 1119, 1124 (7th Cir.1995).

In short, while it is most regrettable that the plaintiff injured himself while working on a plank on the floor, his allegations do not support a finding that he was exposed to an unreasonable risk of harm. "[F]ailing to provide a maximally safe environment, one completely free from . . . safety hazards, is not [a constitutional violation]." *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001). The plaintiff has failed to state an Eighth Amendment claim against those to whom he complained about the defective flooring. Any suit for negligence must be brought in state court.

However, the plaintiff has articulated a viable First Amendment claim against his work supervisor, defendant Bradfield, who allegedly wrote the plaintiff a "bogus" disciplinary report and triggered his discharge from his work assignment purportedly on account of the plaintiff's persistent complaints about unsafe work conditions. It is well established that prison officials violate the Constitution when they retaliate against a prisoner for filing grievances or initiating lawsuits. *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002). Although inmates have no constitutionally protected interest in their job assignment, *see, e.g., Knox v. Wainscott*, No. 03 C 1429, 2003 WL 21148973, *8 (N.D. Ill. May 14, 2003) (Manning, J.), *citing Meachum v. Fano*, 427 U.S. 215, 225 (1976), punishing an inmate for filing grievances violates his constitutional rights, even if the retaliatory action would not otherwise independently violate the Constitution. *See, e.g., Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). Accordingly, while a more fully developed record may belie the plaintiff's allegations, defendant Bradfield must respond to the complaint.

The court notes that the plaintiff also makes a fleeting reference to having been denied proper medical care for an arm injury he sustained in the kitchen accident. However, no health care providers are listed as defendants, the denial of medical care is not linked to any of the named defendants, and any medical claim is not properly joined with the plaintiff's retaliation claim against defendant Bradfield. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (unrelated claims against different defendants belong in separate lawsuits). If the plaintiff wishes to sue correctional officials and/or medical professionals for acting with deliberate indifference to his serious medical needs, then he will have to initiate a second, separate lawsuit against them.

For the foregoing reasons, the clerk shall issue summons forthwith for service on defendant Bradfield only. The United States Marshals Service is appointed to serve the defendant. Any service forms necessary for the plaintiff to complete will be sent by the Marshal as appropriate to serve the defendant with process. The U.S. Marshal is directed to make all reasonable efforts to serve the defendant. If Mr. Bradfield can no longer be found **(CONTINUED)**

| **STATEMENT (continued)** |
|---|

at the work address provided by the plaintiff, the Illinois Department of Corrections shall furnish the Marshal with the defendant's last-known address. The information shall be used only for purposes of effectuating service [or for proof of service, should a dispute arise] and any documentation of the address shall be retained only by the Marshal. Address information shall not be maintained in the court file, nor disclosed by the Marshal. The Marshal is authorized to mail a request for waiver of service to the defendant in the manner prescribed by Fed. R. Civ. P. 4(d)(2) before attempting personal service.

The plaintiff is instructed to file all future papers concerning this action with the Clerk of Court in care of the Prisoner Correspondent. On this single occasion, the court has made judge's and service copies for the plaintiff. However, **the plaintiff is advised that he must provide the court with the original plus a complete judge's copy, including any exhibits, of every document filed.** In addition, the plaintiff must send an exact copy of any court filing to the defendant [or to defense counsel, once an attorney has entered an appearance on the defendant's behalf]. Every document filed with the court must include a certificate of service stating to whom exact copies were mailed and the date of mailing. Any paper that is sent directly to the judge or that otherwise fails to comply with these instructions may be disregarded by the court or returned to the plaintiff.